## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

MARY LOUISE MONTOYA,

      Plaintiff,

v.                                                Civ. No. 16-116 GJF

CAROLYN COLVIN, *Acting Commissioner of the Social Security Administration*,

      Defendant.

## <u>ORDER</u>

THIS MATTER is before the Court on Plaintiff's "Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum" ("Motion"), filed on August 5, 2016. ECF No. 24.  The Commissioner responded on October 7, 2016.  ECF No. 25.  Plaintiff replied on October 21, 2016.  ECF No. 26.  Having meticulously reviewed the entire record and the parties' pleadings, the Court finds that Plaintiff's Motion is not well taken and that the Administrative Law Judge's ("ALJ's")'s ruling should be **AFFIRMED**.  Therefore, and for the following reasons, the Court will **DENY** Plaintiff's Motion.

## I.      BACKGROUND

Plaintiff was born on February 6, 1962, in Albuquerque, New Mexico.  Administrative R. ("AR") 201-02.  She graduated from high school and obtained additional vocational training as a nurse's assistant, phlebotomist, and teacher's assistant.  AR 239.  In the last fifteen years, she reported working as both a clerk and an educational assistant.  AR 240.  As a clerk, she assisted individuals with completing food stamp applications, did computer checks to verify their qualifications for food assistance, handled filing, and engaged in miscellaneous office work.  AR

1

254.  As a teaching assistant, she spent her time entirely in the classroom assisting with the instruction of students.  AR 255.

Plaintiff filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") alleging disability beginning on July 1, 2012, due to fibromyalgia, back pain, and depression.  AR 87.  The Social Security Administration ("SSA") denied Plaintiff's application initially on January 25, 2013, and upon reconsideration on May 9, 2013.  AR 87-98, 125-36.  At her request, Plaintiff received a *de novo* hearing before ALJ Ann Farris on March 25, 2014, at which Plaintiff, her non-attorney representative, and a vocational expert ("VE") appeared.  AR 61-84.  On September 26, 2014, the ALJ issued her decision, finding that Plaintiff was not disabled within the meaning of the Social Security Act ("the Act").  AR 42-56.  Plaintiff submitted additional medical evidence to the SSA Appeals Council, but it declined review on January 11, 2016.  AR 8-33.  As a consequence, the ALJ's decision became the final decision of the Commissioner.  20 C.F.R. § 422.210(a) (2016).

Plaintiff timely filed her appeal with the U.S. District Court on February 18, 2016.  ECF No. 1.

## II.   PLAINTIFF'S CLAIMS

Plaintiff advances three grounds for relief.  First, she argues that the ALJ failed to develop the record. Pl.'s Mot. 8-9, ECF No. 24.  Next, she avers that the ALJ failed to properly weigh the opinion of three different health providers.  *Id.* at 10-14.  Lastly, she contends the ALJ's "step five" decision is not supported by substantial evidence. *Id.* at 14-17.

## III.   APPLICABLE LAW

### A.  Standard of Review

When the Appeals Council denies a claimant's request for review, the ALJ's decision

becomes the final decision of the agency.[1]  The Court's review of that final agency decision is both factual and legal.  *See Maes v. Astrue*, 522 F.3d 1093, 1096 (10th Cir. 2008) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497-98 (10th Cir. 1992)) ("The standard of review in a social security appeal is whether the correct legal standards were applied and whether the decision is supported by substantial evidence.")

The factual findings at the administrative level are conclusive "if supported by substantial evidence." 42 U.S.C. § 405(g) (2012).  "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Doyal v. Barnhart*, 331 F.3d 758, 760 (10th Cir. 2003).  An ALJ's decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214. Substantial evidence does not, however, require a preponderance of the evidence.  *See Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th Cir. 2004)).  A court should meticulously review the entire record but should neither re-weigh the evidence nor substitute its judgment for that of the Commissioner.  *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214.

As for the review of the ALJ's legal decisions, the Court reviews "whether the ALJ followed the specific rules of law that must be followed in weighing particular types of evidence in disability cases." *Lax*, 489 F.3d at 1084.  The Court may reverse and remand if the ALJ failed "to apply the correct legal standards, or to show . . . that she has done so." *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996).

---

[1] A court's review is limited to the Commissioner's final decision, 42 U.S.C. § 405(g) (2012), which generally is the ALJ's decision, not the Appeals Council's denial of review.  20 C.F.R. § 404.981 (2016); *O'Dell v. Shalala*, 44 F.3d 855, 858 (10th Cir. 1994).

Ultimately, if substantial evidence supports the ALJ's findings and the correct legal standards were applied, the Commissioner's decision stands and the plaintiff is not entitled to relief. *Langley*, 373 F.3d at 1118; *Hamlin*, 365 F.3d at 1214, *Doyal*, 331 F.3d at 760.

### B.  Sequential Evaluation Process

The SSA has devised a five-step sequential evaluation process to determine disability. *See Barnhart v. Thomas*, 540 U.S. 20, 24 (2003); 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4) (2016). At the first three steps, the ALJ considers the claimant's current work activity, the medical severity of the claimant's impairments, and the requirements of the Listing of Impairments. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4), & Pt. 404, Subpt. P, App'x 1. If a claimant's impairments are not equal to one of those in the Listing of Impairments, then the ALJ proceeds to the first of three phases of step four and determines the claimant's residual functional capacity ("RFC"). *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(e), 416.920(e). In phase two, the ALJ determines the physical and mental demands of the claimant's past relevant work, and in the third phase, compares the claimant's RFC with the functional requirements of her past relevant work to determine if the claimant is still capable of performing her past work. *See Winfrey*, 92 F.3d at 1023; 20 C.F.R. §§ 404.1520(f), 416.920(f). If a claimant is not prevented from performing her past work, then she is not disabled. 20 C.F.R. §§ 404.1520(f), 416.920(f). The claimant bears the burden of proof on the question of disability for the first four steps, and then the burden of proof shifts to the Commissioner at step five. *See Bowen v. Yuckert*, 482 U.S. 137, 146 (1987); *Talbot v. Heckler*, 814 F.2d 1456, 1460 (10th Cir. 1987).

If the claimant cannot return to her past work, then the Commissioner bears the burden at the fifth step of showing that the claimant is capable of performing other jobs existing in significant numbers in the national economy. *See Thomas*, 540 U.S. at 24-25; *see also Williams*

*v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988) (discussing the five-step sequential evaluation process in detail).

## IV.    THE ALJ'S DECISION

The ALJ issued her decision on September 26, 2014.  AR 56.  At step one, she found that Plaintiff had not engaged in substantial gainful activity since the alleged disability onset date of July 1, 2012.  AR 44.  Although Plaintiff worked for sixty-eight (68) days as a lunch server in the summer of 2013, the ALJ found the endeavor to be an "unsuccessful work attempt" and proceeded to step two.  AR 44.  There, she found that Plaintiff suffered from the following severe impairments: (1) somatoform disorder; (2) major depressive disorder; and (3) fibromyalgia.  AR 44.  In tandem with these findings, the ALJ also found Plaintiff's dyshydrotic eczema and anxiety to be non-severe and provided her rationale for finding them so.  AR 44-47.

At step three, the ALJ found that none of Plaintiff's impairments, alone or in combination, met or medically equaled the severity of a listed impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1.  AR 47-49.  This finding included an analysis of Plaintiff's mental impairments, which the ALJ found did "not meet or medically equal the criteria of Listing Sections 12.04 (affective disorders) and/or 12.07 (somatoform disorders)."  AR 47-49.

Because none of Plaintiff's impairments satisfied an applicable Listing, the ALJ moved on to step four and assessed Plaintiff's RFC.  AR 49-54.  "After careful consideration of the record," the ALJ determined that "[Plaintiff] has the residual functional capacity to perform light work.  [Plaintiff] can frequently handle and finger.  [Plaintiff] can make simple decisions with few workplace changes."  AR 49.  In reaching this conclusion, the ALJ accorded great weight to the "State agency" and its "non-treating, non-examining medical sources," who uniformly opined:

> [Plaintiff] is limited to lifting 10 pounds frequently and 20 pounds occasionally. Standing and walking can be performed for up to six hours a day. Work can be performed where interpersonal contact is routine but superficial. Tasks should be no more complex than those learned by experience, with several variables and judgment within limits. Supervision required is little for routine tasks but detailed for non-routine.

AR 54. The ALJ found "these opinions [to be] internally consistent and well supported by a reasonable explanation and the available evidence." AR 54. Additionally, the ALJ assigned "some weight" to Dr. Paula Hughson, a consultative psychiatric examiner. AR 54. *See* AR 370-74. Following her examination, Dr. Hughson assigned Plaintiff a Global Assessment of Functioning ("GAF") score of fifty-five (55), which indicates "moderate symptoms and a moderate difficulty in social, occupational, or school functioning." AR 54. Furthermore, she opined that Plaintiff possessed multiple, mild mental limitations and one moderate limitation in her "ability to carry out instructions." AR 54, 370-74. The ALJ concurred with Dr. Hughson's conclusions, giving weight to the GAF score only "in relation to [Plaintiff's] concentration," and finding "that all other facets of [Plaintiff's] psychological impairments are mild." AR 54. Lastly, the ALJ ascribed "little weight" to certified nurse practitioner Myrna Gallegos, because Ms. Gallegos is not a doctor, her opinion "is vague as to what amount [Plaintiff] can lift, carry, push and or pull," and her opinion "is not consistent with the overall medical record or the above residual functional capacity." AR 54.

At step four, the ALJ found that Plaintiff could not perform any past relevant work, based on the VE's testimony that Plaintiff "would not be able to perform all of the requirements of her past work given the limitations of her residual functional capacity." AR 55. Accordingly, the ALJ proceeded to step five. Based on Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff could perform other jobs that exist in significant numbers in the national economy. AR 55-56. These jobs, as described by the VE, Ms. M. Diane Weber, included retail

counter clerk, garment bagger, and office helper.   AR 55-56.   Finally, the ALJ found that Plaintiff had not been under a disability, as defined by the Act, during the relevant time period and she denied the claim.   AR 56.

## V.   ANALYSIS

As set forth below, Plaintiff fails to marshal sufficient support from facts or case law to establish that the ALJ applied incorrect legal standards or that her decision is unsupported by substantial evidence.   Consequently, her Motion must be denied.   The Court's reasoning as to each of Plaintiff's three claims will be discussed *seriatim*.

### A.  The ALJ Adequately Developed the Record

As her first ground for remand, Plaintiff contends that the ALJ failed in her duty to develop the record.   Pl.'s Mot. 8-10 (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993); *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999)).   She reasons that during her direct examination, "she revealed she had been getting trigger point injections with Dr. Cisneros at First Choice."   *Id.* at 8 (citing AR 72).   Accordingly, the ALJ urged Plaintiff's representative to transmit the records to her both during Plaintiff's direct examination and at the conclusion of the hearing.   *Id.* (citing AR 72-73, 82-83).   Yet, Plaintiff opines, "[t]here are no records from Dr. Cisneros or First Choice in the record."   *Id.* (citation omitted).

The Commissioner responds that "[a]n ALJ's duty to develop the record is not unqualified."   Def.'s Resp. 11, ECF No. 25 (citing *Wall v. Astrue*, 561 F.3d 1048, 1063 (10th Cir. 2009)).   She explains that "[w]hile the agency is obligated to develop a claimant's complete medical history for at least the 12 months preceding her application for disability benefits, 20 C.F.R. § 404.1512(d), it is the claimant who holds the burden to furnish the agency sufficient medical evidence to support her allegations of disability."   *Id.* at 9 (citing 42 U.S.C. §

423(d)(5)(A)).  Turning to the proceeding itself, the Commissioner recounts that the ALJ twice requested the Dr. Cisneros records from Plaintiff's representative and even agreed to review them, once submitted, before rendering her opinion.  *Id.* at 10.  Only after allowing Plaintiff's case to remain pending for six months while awaiting the records -- and yet never receiving them -- did the ALJ ultimately issue her unfavorable decision.  *Id.*  The Commissioner notes that even after hiring her present counsel of record, Plaintiff has never submitted the Dr. Cisneros records to the SSA.  *Id.* at 11.  Alternatively, the Commissioner argues that treatment records from Dr. Cisneros would not have influenced the ALJ's disability determination.  *Id.* at 10-11.

"The burden to prove disability in a social security case is on the claimant, and to meet this burden, the claimant must furnish medical and other evidence of the existence of the disability." *Branum v. Barnhart*, 385 F.3d 1268, 1271 (10th Cir. 2004).  Nonetheless, "[t]he ALJ has a basic obligation in every social security case to ensure that an adequate record is developed during the disability hearing consistent with the issues raised." *Henrie v. U.S. Dep't of Health & Human Servs.*, 13 F.3d 359, 360-61 (10th Cir. 1993) (citation omitted).  That duty, however, "is one of inquiry and factual development. The claimant continues to bear the ultimate burden of proving that she is disabled under the regulations." *Westbrook v. Massanari*, 26 F. App'x 897, 903 (10th Cir. 2002) (unpublished) (citing *Henrie*, 13 F.3d at 361).

Here, Plaintiff clearly attempts to have it both ways.  On the one hand, Plaintiff pleads reversible error for the lack of medical records that she contends would support a finding of disability.  On the other, neither her representative at the administrative hearing nor her present counsel, in their several combined years of representing Plaintiff, have ever submitted these purportedly critical records for review.

The Commissioner properly argues, in contrast to what Plaintiff would have this Court find, that the ALJ's duty to develop the record "is not absolute." *See* Def.'s Resp. 11 (citing *Wall*, 561 F.3d at 1063). Rather, "[t]he key inquiry is whether the ALJ developed the record sufficiently to reflect the nature of the claimant's impairments, the on-going treatments and medications the claimant is receiving, and the impact of the impairments on the claimant's daily activities." *Sparks v. Chater*, 107 F.3d 21 (10th Cir. 1997) (citing *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993)). In this case, the ALJ did all these things. First, she developed the record sufficiently to describe and evaluate each of Plaintiff's impairments. *See* AR 44-54. Moreover, she specifically mentioned Plaintiff's trigger point injection treatment as part of that evaluation. *See* AR 50. Most importantly, even without the Dr. Cisneros records, she was able to competently analyze the minimal impact of Plaintiff's impairments on her activities of daily living. *See* AR 49-54.

Ultimately, Plaintiff's failure to produce the Dr. Cisneros records cannot be attributed to the ALJ. The ALJ diligently sought the records from Plaintiff, through her representative, and held the record open to review them before rendering her decision. To now fault the ALJ for not including the records in her decision is tantamount to the scenario the Tenth Circuit confronted in *Maes v. Astrue*, where the court held that "[a]lthough the ALJ has the duty to develop the record, such a duty does not permit a claimant, through counsel, to rest on the record - indeed, to exhort the ALJ that the case is ready for decision - and later fault the ALJ for not performing a more exhaustive investigation." 522 F.3d 1093, 1097 (10th Cir. 2008). Based on *Maes*, Plaintiff's failure to adduce the records as requested now precludes her from claiming legal error based on their omission from the ALJ's decision. Therefore, this claim must be denied.

**B.  The ALJ Properly Evaluated Opinion Evidence from Medical Providers**

Next, Plaintiff argues that the ALJ improperly evaluated the opinions of three separate medical providers.  For the reasons detailed below, the Court will deny each of these claims.

### 1.  Myrna M. Gallegos, Certified Nurse Practitioner ("CNP")

To begin, Plaintiff alleges that "Nurse Gallegos's opinions were improperly rejected." Pl.'s Mot. 10.  Her argument is two-fold.  First, she believes "[t]he ALJ's reasoning for rejecting Nurse Gallegos's opinion is contrary to the regulations and rulings," and specifically, Social Security Ruling ("SSR") 06-03p.   *Id.* at 10-11.   Additionally, she challenges the ALJ's underlying rationale for rejecting Nurse Gallegos's opinion, faulting the ALJ both for finding Nurse Gallegos's opinion "vague as to what amount [Plaintiff] can lift, carry, push and or pull," AR 54, and for being "not consistent with the overall medical record or the above residual functional capacity."  Pl.'s Mot. 11-12.

The Commissioner responds that the ALJ advanced "a number" of permissible reasons for allocating Nurse Gallegos's opinion little weight.  Def.'s Resp. 13.  Furthermore, she contends that these reasons comport with the provisions of SSR 06-03p.  *Id.*  The Commissioner explains, "[the ALJ] reasonably noted that [Nurse Gallegos's] opinion was vague, noting that it did not provide limitations on what Plaintiff could lift, carry, push, or pull."  *Id.* (citing AR 54). The Commissioner then describes, through citations to the record, how Nurse Gallegos's opinion concerning Plaintiff's impairments conflicted with the medical records compiled by Nurse Gallegos.  *Id.* at 14.  In so doing, the Commissioner avers "the ALJ provided specific and supportable reasons to place only little weight on Nurse Gallegos's opinion."  *Id.*

 SSR 06-03p was promulgated to resolve how the Social Security Administration would consider opinions from sources who are not "acceptable medical sources."   The Ruling clarifies

that the distinction between "acceptable medical sources" and other health care providers is important for three reasons: first, evidence from "acceptable medical sources" is needed to establish the existence of a medically determinable impairment; second, only "acceptable medical sources" can provide medical opinions; and third, only "acceptable medical sources" can be considered treating sources whose medical opinions may be entitled to controlling weight. SSR 06-03p, 2006 WL 2329939, at *1-2 (Aug. 9, 2006).   The Ruling identifies nurse practitioners as "other sources" whose evidence may be used "to show the severity of the individual's impairment(s) and how it affects the individual's ability to function."   *Id.* at *2 Information from "other sources," however, cannot establish the existence of an impairment.  *Id.*

SSR 06-03p provides that the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2016) can be applied to opinion evidence from "other sources."  *Id.*  These factors include:

> how long the source has known and how frequently the source has seen the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support an opinion; how well the source explains the opinion; whether the source has a specialty or area of expertise related to the individual's impairment(s); and any other factors that tend to support or refute the opinion.

*Id.*  An adjudicator "generally should explain the weight given to opinions from these 'other sources'" or should otherwise discuss the evidence in a manner that permits a claimant or subsequent reviewer "to follow the adjudicator's reasoning."  *Id.* at *6.

The undersigned finds that the ALJ did not err in her treatment of Nurse Gallegos's opinions.  The Tenth Circuit has held that all that is required from an ALJ are "good reasons" when discussing the weight afforded to an opinion from a nurse practitioner.  See *Nichols v. Astrue*, 341 F. App'x 450, 454 (10th Cir. 2009) (unpublished) (citing *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)).   Further, these "good reasons" may properly derive from the

application of the §§ 404.1527(d) and 416.927(d) factors to a nurse practitioner's opinions. "It is not necessary, however, for the ALJ to address each factor expressly or at length." *Nichols*, 341 F. App'x. at 453 (quoting SSR 06-03p).

In this case, the ALJ explained that she gave Nurse Gallegos's opinions "little weight" primarily because she "is a nurse practitioner and not a doctor." AR 54. This evaluation was appropriate, as it explained why the ALJ discredited Nurse Gallegos's assessment that Plaintiff had "chronic medical conditions" including "major depression, fibromyalgia, osteoarthritis of multiple joints and back problems," which the ALJ had detailed in the two preceding sentences. AR 53-54. For purposes of the Act, Nurse Gallegos was not a competent medical source to diagnose these impairments. *See* SSR 06-03p, 2006 WL 2329939, at *2. Additionally, the ALJ faulted Nurse Gallegos's opinion for being "vague as to what amounts [Plaintiff] can carry, push and or pull." AR 54. Although Plaintiff asserts "[t]he ALJ could have also re-contacted Nurse Gallegos for additional information," Pl.'s Reply 3, ECF No. 26, that contact would only have been necessary if the ALJ had "insufficient evidence to determine" whether Plaintiff was disabled. *See* 20 C.F.R. § 404.1520b(c) (2016). That was not the case here, as the ALJ turned to Nurse Gallegos's own treatment notes, in tandem with Plaintiff's statements about her activities of daily living, to determine Plaintiff was not disabled. In fact, the ALJ's review of those treatment notes led to the third basis for discrediting Nurse Gallegos opinion, in that the notes did not support Nurse Gallegos's opinion concerning Plaintiff's impairments. *See Castellano v. Sec'y of Health & Human Servs.*, 26 F.3d 1027, 1029 (10th Cir. 1994) (discounting treating physician opinion which was unsupported by his own notes). Each of the above represents a "good reason" for discounting Nurse Gallegos's opinion, and, under Tenth Circuit precedent,

"[n]othing more was required."  *See Oldham*, 509 F.3d at 1258.  Therefore, the Court will deny this claim.

### 2.  Dr. Paula Hughson, M.D., Agency Consultative Examiner

Next, Plaintiff argues that the ALJ improperly accorded only "some weight" to the opinions of Dr. Paula Hughson, the consultative psychiatrist.  Pl.'s Mot. 13-14.  Following an evaluation of Plaintiff on January 3, 2013, Dr. Hughson completed both a "Consultative Psychiatric Examination Report" and a separate checkbox-style form entitled "Statement of Opinion of Abilities (Psychiatric Only)."  AR 370-75.  On the form, Dr. Hughson noted numerous mild mental limitations, and one moderate limitation in Plaintiff's "ability to carry out instructions."  AR 375.  From that singular limitation, Plaintiff suggests the ALJ "supplie[d] flawed reasoning to support her findings . . . [and] did not explain how Dr. Hughson's opinion or other medical evidence of record supports her RFC that [Plaintiff] can make simple decisions with few workplace changes."  *Id.* at 13.  Indeed, by her account, "the ALJ's failure to evaluate properly the opinion of Dr. Hughson requires reversal and remand."  *Id.* at 14.

The Commissioner attacks this claim on two grounds.  First, she posits that alongside the opinion of Dr. Hughson, the ALJ accorded "great weight" to the non-examining state agency consultants, Dr. Dan Cox, M.D., and Dr. Susan Daugherty, Ph.D., AR 54, both of whom opined that "Plaintiff was capable of understanding, remembering, and carrying out simple and detailed instructions."  Def.'s Resp. 15 (citing AR 90-92 (Dr. Cox), AR 121-22 (Dr. Daugherty)).  Further, the Commissioner highlights how the ALJ "only gave 'some weight' to Dr. Hughson's opinion[,] noting that she only gave Dr. Hughson's GAF score of 55 weight in relation to Plaintiff's concentration."  *Id.* (citing AR 54).  Thus, she reasons, albeit obliquely, that the RFC ultimately crafted by the ALJ is "[c]onsistent with Dr. Hughson's opinion."  *Id.*  In the

alternative, the Commissioner argues that the one moderate limitation identified by the ALJ was ascribed in "the context of considering whether Plaintiff's impairments met or equaled a listing." *Id.* at 16. As a consequence, she contends "it was not inconsistent for the ALJ to find Plaintiff had moderate limitations in concentration, persistence, and pace when considering whether her impairments met or equaled a listing, but then assess [a] residual functional capacity limiting Plaintiff only to simple decisions with few workplace changes." *Id.* (internal citations omitted).

The ALJ committed no error here, despite the parties' inability to identify why. The Tenth Circuit's decision in *Smith v. Colvin* makes clear that "an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." 821 F.3d 1264, 1269 (10th Cir. 2016) (citing *Vigil v. Colvin* 805 F.3d 1199, 1204 (10th Cir. 2015)). In *Smith*, the non-examining state physician assessed a similar "moderate limitation" in the claimant's ability to "accept instructions and respond appropriately to criticism by supervisors." *Id.* at 1268. The ALJ omitted that limitation in the claimant's RFC and found instead that the claimant "(1) could not engage in face-to-face contact with the public and (2) could engage in only simple, repetitive, and routine tasks." *Id.* at 1269. "Through these findings," the Tenth Circuit held that "the [ALJ] incorporated the functional limitations of [the claimant's] moderate nonexertional limitations." *Id.*

Under the rule in *Smith v. Colvin*, the ALJ's RFC finding in the present case accounts for the moderate limitation identified by Dr. Hughson. Moreover, on a functional level, by limiting Plaintiff to light work, simple decisions, and few workplace changes, the RFC limits Plaintiff to unskilled work, *see* AR 55-56, where a claimant need only understand, remember, and carry out "simple instructions." SSR 96-9P, 1996 WL 374185, at *9 (July 2, 1996). This only reinforces the wisdom of *Smith v. Colvin*, and lends credence to this Court's decision to deny this claim.

### 3.  Ms. Charlene Chavez, Vocational Rehabilitation Counselor

Lastly, Plaintiff claims "[t]he ALJ erred by failing to discuss" the opinion of Ms. Charlene Chavez, a vocational rehabilitation counselor.  Pl.'s Reply 4.  She claims "the ALJ indicated she knew" that Plaintiff had been to the Division of Vocational Rehabilitation, but failed to discuss Ms. Chavez's opinion that Plaintiff had "been unsuccessful in securing her employment due to her disability being too severe."  Pl.'s Mot. 14.  Plaintiff insists that this opinion should have been evaluated under SSR 06-03p as an "other source," and further, that the ALJ's failure to do so necessitates remand.

The Commissioner responds that Ms. Chavez's letter represents an impermissible intrusion into the province of the ALJ to determine disability.  *See* Def.'s Resp. 17.  Further, she argues the ALJ "is not required to explicitly discuss a non-medical opinion so long as it is evident she considered it."  *Id.* (citing *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 11663 (10th Cir. 2012)).  Finally, the Commissioner believes "this Court should take her word for it" when the ALJ states she considered the entire record.  *Id.* (citing *Flaherty v. Astrue*, 515 F.3d 1067, 1071 (10th Cir. 2007)).

Although the Court declines the Commissioner's invitation to merely "take the ALJ's word for it," the Court still cannot find reversible error here.  Under SSR 06-03p, information from "other sources" like Ms. Chavez "cannot establish the existence of a medically determinable impairment," but rather, may only "provide insight into the severity of the impairment(s) and how it affects the individual's ability to function."  SSR 06-03p, 2006 WL 2329939, at *2.  Nonetheless, Ms. Chavez's letter clearly goes beyond providing insight about Plaintiff's impairments and how they affect her.  *See* AR 402.  In fact, the letter not only concludes that Plaintiff has limitations - including depression, fibromyalgia, osteoarthritis, and

back problems - but goes so far as to state that Plaintiff has been unsuccessful in securing employment as a *direct result* of these limitations.  AR 402.  And yet, the letter goes even further.  Prior to its conclusion, the letter communicates that Plaintiff's case could be closed because her disability is "too severe."  AR 402.  Notwithstanding Ms. Chavez's obvious opinion regarding Plaintiff's disability, the ultimate issue of disability is not for a vocational rehabilitation counselor to determine.  Governing regulations allocate that authority exclusively to the ALJ.  *See* 20 C.F.R. §§ 404.1527(d), 416.927(d).  Beyond her comments regarding Plaintiff's disability, Ms. Chavez's letter provided nothing for the ALJ to review under the relevant "other source" standard.  The record makes clear that the ALJ considered Ms. Chavez's letter,[2] and based on its non-medical, non-relevant content, regulations required nothing more.  *See Keyes-Zachary*, 695 F.3d at 1163-67.  The Court denies this claim.

### C.  The ALJ's Step Five Finding Is Supported by Substantial Evidence

Lastly, Plaintiff contends that the ALJ's step five finding is not supported by substantial evidence.  She frames the challenge by noting that, at step five of the sequential evaluation, the Commissioner carries the burden "to show that the claimant is able to perform other work existing in significant numbers in the national economy."  Pl.'s Mot. 14.  By Plaintiff's assessment, "[t]he numbers cited by the ALJ in the decision do not correspond to the jobs of counter clerk, garment bagger, and office helper, but rather a larger group of occupations those jobs fall into."  *Id.* at 16.  Thus, she reasons, "[w]hen the ALJ concluded that the number of jobs was significant, she was relying on incorrect figures."  *Id.* (citing AR 55-56).  Consequently, she

---

[2] On direct examination, the ALJ asked Plaintiff, "And you recently went to division of vocational rehabilitation; is that correct?"  AR 68.  This question, asked by the ALJ on March 25, 2014, correlates to the letter drafted by Ms. Chavez one week earlier, on March 18, 2014.  *Compare* AR 61 (March 25, 2014 – date of hearing), *with* AR 402 (March 18, 2014 – date of Ms. Chavez's letter).  Had the ALJ not reviewed the letter, she would have no basis for this unusual question.

claims "reversal and remand are required," Pl.'s Mot. 17, and cites to *Trimiar* for an exposition of the factors that should underpin the ALJ's ultimate decision. *Id.* at 14-15 (citing *Trimiar v. Sullivan*, 966 F.2d 1326, 1330 (10th Cir. 1992) (providing the following factors to consider at step five in determining whether work exists in significant numbers: (1) the level of claimant's disability; (2) the reliability of the vocational expert's testimony; (3) the distance claimant is capable of travelling to engage in the assigned work; (4) the isolated nature of the jobs; and (5) the types and availability of such work)).

The Commissioner contests Plaintiff's claim, and adds that "the ALJ may rely upon vocational expert testimony or information from various occupational sources" to determine whether work exists in the national economy in significant numbers. Def.'s Resp. 18 (citing 20 C.F.R. § 404.1566(d) (2016)). She further explains that the Dictionary of Occupational Titles ("DOT")[3] "provides significant information about the exertional requirements of a job, but *does not* contain information regarding the frequency of a job in the national economy." *Id.* (emphasis added). Accordingly, she states, "the vocational expert identified the number of jobs within the national economy based upon the [O]ccupational [E]mployment [S]urvey,[4] but then carved out the number of jobs for each position that were full-time." *Id.* (citing AR 80). Lastly, the Commissioner notes the VE "provided a third number for each job identified that she stated represented the DOT number for the job," but challenges Plaintiff's notion that the ALJ could

---

[3] The DOT includes detailed descriptions of jobs (classified by their exertional and skill requirements) that exist in the national economy. 20 C.F.R. § 220.134 (2016). Regulations require the Commissioner to take administrative notice of job information provided by the DOT. 20 C.F.R. § 404.1566 (2016).

[4] The Occupational Employment Statistics ("OES") Survey is a federal-state cooperative program between the U.S. Department of Labor's Bureau of Labor Statistics and the state workforce agencies that provides national occupational employment and wage rate estimates. *See Anders v. Colvin*, No. 2:14-CV-00610-EJF, 2015 WL 5555745, at *13 (D. Utah Sept. 18, 2015) (unpublished) (citation and internal quotation marks omitted); *Guidry v. Astrue*, No. 08-CV-01846-PAB, 2009 WL 4884282, at *5 (D. Colo. Dec. 10, 2009) (unpublished). Job data in the OES naturally varies from the DOT, as the OES classifies jobs by census codes, known as Standard Occupational Classification ("SOC") codes, rather than DOT codes. *McDonald v. Colvin*, No. CIV-14-220-SPS, 2015 WL 5749392, at *2 (E.D. Okla. Sept. 30, 2015) (unpublished).

*only* rely on that third data set.  *Id.*  Rather, she contends Plaintiff has cited "no authority for that proposition," and instead, she urges that case law "supports a more common sense approach" to deciding these issues.  *Id.* at 18-19.

At its core, this claim arises from the testimony of VE Weber, who testified that someone with Plaintiff's assigned RFC could perform three separate jobs.  *See* AR 79-81.  The first she identified was "counter clerk," DOT number 249.366-010.  She stated, "[w]ithin the national economy there are 434,000 jobs within the [O]ccupational [E]mployment [S]urvey; 246,000 of those are considered full time; and 1,600 are representing the <u>DOT</u> number for the counter clerk."  AR 80 (emphasis in original).  She then advanced the position of "garment bagger," DOT number 920.687-018.  She observed, "[w]ithin the national economy there are 660,600 jobs within the [O]ccupational [E]mployment [S]urvey; 529,000 of those are considered full time; and 800 are representing the garment bagger <u>DOT</u>."  AR 80 (emphasis in original).  Lastly, she suggested that Plaintiff could work as an "office helper," DOT number 239.567-010.  AR 80.  As to this occupation, she indicated that "[w]ithin the national economy there are 77,000 jobs within the occupational employment group; 58,000 are full time; 3,900 are representing the office helper."  AR 80.  In sum, between the three jobs, the VE testified that there were 1,171,600 jobs available to Plaintiff within the national economy, of which 833,000 were full time, and 6,300 represented jobs squarely within Plaintiff's recommended DOT numbers.  *See* AR 80.

The VE's trifurcation between jobs within the national economy, full-time jobs in the national economy, and jobs "representing" the specific DOT number is a peculiar break from the customary terminology in these cases.  Ultimately, whether by their oddity, or by the ALJ's desire to simplify the numbers, the VE's delineations did not appear in the ALJ's decision.  AR 55-56.  Instead, the ALJ recounted that Plaintiff could "work as a counter clerk in retail, SVP 2,

unskilled DOT#249-366-010 (433,000), a garment bagger, SVP 1, unskilled, DOT#920-687-018 (660,000) and an office helper, SVP 2, unskilled DOT#239-567-010 (77,000)." This abbreviated reference to full-time OES numbers, however, also deviates from the mean in cases filed in the district courts across the Tenth Circuit, where both the ALJ and the reviewing court typically rely on VE testimony about two categories of jobs: (1) those existing in the national economy, and (2) those existing in the regional economy or the state of filing. *See, e.g.,* Order, Sep. 29, 2016, ECF No. 25, at 30, *Ryan v. Colvin*, Civ. No. 15-740 KBM (D.N.M. filed Aug. 24, 2015) (unpublished) (describing VE testimony on jobs in the national economy and regional economy); *Pursley v. Colvin*, No. CIV-15-276-SPS, 2016 WL 5408154, at *2 (E.D. Okla. Sept. 28, 2016) (unpublished) (noting ALJ's finding that claimant could perform other work in the regional or national economy); *Kummer v. Colvin*, No. 2:15-CV-00318-DBP, 2016 WL 4691588, at *5 (D. Utah Sept. 7, 2016) (unpublished) (discussing VE testimony of positions available nationally and regionally); *Wright v. Colvin*, No. CIV-15-558-BMJ, 2016 WL 4077244, at *2 (W.D. Okla. July 29, 2016) (noting the ALJ's reliance on VE testimony to find jobs existed in significant numbers in the regional and national economies). The focus on jobs in *either* the national economy or regional economy is a reflection of unique Tenth Circuit case law, which allows an ALJ to make step five findings based on a determination of whether work exists in significant numbers in the regional *or* national economy, while still acknowledging "that the controlling statutes, federal regulations, and case law all indicate that the proper focus generally must be on jobs in the national, not regional, economy." *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009).

Notwithstanding the novelty of the way in which job numbers were calculated in this case, the Court cannot accept Plaintiff's position that the ALJ could only rely on the VE's testimony "representing" the specific DOT number. *See* Pl.'s Mot. 16-17. To the contrary, the

Commissioner has aptly noted that Plaintiff "cites to no authority for that proposition."  Def.'s Resp. 18.  In fact, what authority Plaintiff has cited to in her Reply does not support her position. *See* Pl.'s Reply 2 (citing *Carpenter v. Astrue*, 537 F.3d 1264, 1270 (10th Cir. 2008)).  The *Carpenter* court was not concerned with an ALJ's use of OES groupings data to support a finding of sufficient jobs in the national economy, but rather, with the VE's failure to identify specific jobs, according to DOT numbers, that the claimant could perform in the national economy.  *See Carpenter*, 537 F.3d at 1270.  This was particularly important in *Carpenter*, because the ALJ had found the claimant to have mild mental retardation, *id.* at 1265, and the court worried that "[a] proper determination of the combined impact of her impairments on her ability to work underlies a proper finding of her mental and physical residual functional capacities, which is necessary to correctly phrase the ALJ's hypothetical questions to the VE." *Id.* at 1270.  At no point does the opinion discuss job numbers in the national economy.

Plaintiff's argument is further undercut by the fact that numbers approximating OES groupings are routinely used throughout the Tenth Circuit to support step five findings.  In fact, each of the three jobs proposed by the VE – counter clerk, garment bagger, and office helper - have appeared previously in scores of cases within the circuit, and in each, the testimony concerning the relevant number of jobs in the national economy approximates the numbers for the OES groupings in the case at bar.  *See e.g., Wendelin v. Astrue*, 366 F. App'x 899, 903 (10th Cir. 2010) (unpublished) (noting 44,591 counter clerk jobs nationally); *Taylor v. Astrue*, No. 11-CV-01425-CMA, 2012 WL 1520179, at *7 (D. Colo. Apr. 30, 2012) (unpublished) (citing 50,600 counter clerk jobs nationally); *Luttrell v. Astrue*, No. 08-CV-357-TLW, 2010 WL 3824564, at *8 (N.D. Okla. Sept. 27, 2010) (unpublished), *aff'd*, 453 F. App'x 786 (10th Cir. 2011) (discussing 75,000 counter clerk jobs nationally); Order, Feb. 11, 2013, ECF No. 27, at 10,

*Franco v. Colvin*, Civ. No. 12-819 WPL (D.N.M. filed July 27, 2012) (unpublished) (identifying 467,010 garment bagger jobs in the national economy, and 1,110 jobs in the regional (State of New Mexico) economy); *Hernandez v. Colvin*, 567 F. App'x 576, 581 (10th Cir. 2014) (unpublished) (identifying 158,110 office helper jobs in the national economy); *Long v. Colvin*, No. CIV-14-402-F, 2015 WL 5692318, at *13 (W.D. Okla. Sept. 11, 2015) (unpublished), *report and recommendation adopted*, No. CIV-14-402-F, 2015 WL 5708388 (W.D. Okla. Sept. 28, 2015) (finding 140,000 office helper jobs in the national economy); *Whalen v. Colvin*, No. 14-CV-01290-CBS, 2016 WL 1168485, at *2 (D. Colo. Mar. 23, 2016) (unpublished) (reporting 89,460 office helper jobs in the national economy).   Thus, it stands to reason that courts in this circuit routinely accept numbers correlating to OES groupings to substantiate job numbers in the national economy.   To conclude in the converse and accept Plaintiff's argument, this Court would have to discount findings from across both the district courts in the Tenth Circuit and from the Tenth Circuit itself.   This, the Court cannot and will not do.

The Court finds no fault in the VE using OES grouping data to describe quantities of jobs in the national economy and no error in the ALJ using that data to support Plaintiff's finding of nondisability.   The Court finds the ALJ's step five analysis to be supported by substantial evidence, and as a consequence, this claim must be denied.

## VI.   CONCLUSION

For the reasons articulated above, the Court holds that the ALJ's decision was supported by substantial evidence and the correct legal standards were applied.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion to Reverse and Remand to Agency for Rehearing, With Supporting Memorandum [ECF No. 24] **IS HEREBY DENIED.**

   **IT IS FURTHER ORDERED** that the Commissioner's final decision is **HEREBY AFFIRMED** and that the instant cause be **DISMISSED.**

   **IT IS SO ORDERED.**

THE HONORABLE GREGORY J. FOURATT
UNITED STATES MAGISTRATE JUDGE
*Presiding by Consent*